IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

MARGARET S. BLAIR and
ROGER W. BLAIR                                                          PLAINTIFFS

v.                              Case No. 1:12-cv-00110 KGB

CROWN POINT RESORT, INC., et al.                               DEFENDANTS

## ORDER

Before the Court are plaintiffs' motion to exclude untimely expert disclosure of Martin H.

Wagner, M.D. (Dkt. No. 29), plaintiffs' motion for sanctions (Dkt. No. 37), and a joint motion

for settlement conference (Dkt. No. 45).  Defendants responded to plaintiffs' motion to exclude

untimely expert disclosure of Martin H. Wagner, M.D. (Dkt. No. 34).  On April 1, 2014, the

Court conducted a status conference on plaintiffs' motion to exclude the expert disclosure of Dr.

Wagner.  At that hearing, the Court set a briefing schedule for the parties to address these issues.

Plaintiffs filed a brief in support of their motion to exclude and motion for sanctions (Dkt. No.

43) to which defendants responded (Dkt. No. 44) and plaintiffs replied (Dkt. No. 46).

### I.      Factual Background

On April 10, 2013, plaintiffs served their first discovery requests.  These discovery

requests asked for, among other things, facts supporting defendants' denial of liability;

documents supporting defendants' defenses to liability; the identity of anyone working on

defendants' behalf with any knowledge or information pertaining to the occurrence described in

the pleadings; all communications and information sent to and received from persons holding

discoverable information; a list of lay witnesses defendants intended to call at trial; and all non-

privileged things, including videos, which defendants intended to enter into evidence or

otherwise rely upon in their defense; all videos in defendants' possession or control related to this case; the identity of any expert witnesses defendants intended to call at trial; and any documents, letters, emails, attachments, and other data sent by defendants or their attorney to the experts identified, as well as all documents and data received by defendants from their experts.

Defendants responded on May 9, 2013.  Defendants did not disclose at that time private investigator Shelley Anderson, who would perform surveillance on Ms. Blair; the surveillance videos she produced; or Dr. Wagner, the person defendants later would attempt to disclose as a rebuttal expert witness.    Defendants objected to the interrogatory which requested facts supporting defendants' denial of liability on the basis that it sought to discover "mental impressions, conclusions, opinions, legal theories, and trial strategy of Defendants' counsel" (Dkt. No. 37-2).  Defendants also objected to the request for all "pictures, photographs, and videos in [their] possession or control related to this case" on the basis that the request was "vague and overbroad" (*Id.*).  Defendants  did not, however, invoke attorney-work product as a basis on which they declined to produce other information or items requested, including but not limited to documents supporting defendants' defenses to liability; the identity of anyone working on defendants' behalf with any knowledge or information pertaining to the occurrence described in the pleadings; all communications and information sent to and received from persons holding discoverable information; a list of lay witnesses defendants intended to call at trial; and all non-privileged things, including videos, which defendants intended to enter into evidence or otherwise rely upon in their defense; all videos in defendants' possession or control related to this case; the identity of any expert witnesses defendants intended to call at trial; and any documents, letters, emails, attachments, and other data sent by defendants or their attorney to the experts identified, as well as all documents and data received by defendants from their experts.

On or around May 7, 2013, defendants authorized Shelley Anderson to perform 16 hours of surveillance on plaintiff Margaret Blair.  Ms. Anderson performed surveillance on May 15, 17, 18, and 25, 2013.  The results of this surveillance were provided to defendants' counsel on or around May 28, 2013.

Federal Rule of Civil Procedure 26(e)(1) states:

A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

There is no indication in the record before the Court that, on or around May 28, 2013, defendants supplemented their responses to their initial disclosures or plaintiffs' discovery requests to account for Ms. Anderson or her video surveillance.

According to the Court's Final Scheduling Order, "[c]ase-in-chief expert disclosures, including reports, must be made by **January 3, 2014**.  Rebuttal expert disclosures, including reports, must be made by **February 3, 2014**." (Dkt. No. 20).  The Court's Final Scheduling Order set March 19, 2014, as the discovery deadline; by agreement of the parties, this deadline was extended to April 2, 2014 (Dkt. No. 28).  On December 23, 2013, defendants identified Dr. Wagner as a potential expert witness and made certain disclosures, including the disclosure of his curriculum vitae.  Plaintiffs note, however, that this disclosure did not comport with the requirements of a complete Rule 26 disclosure, as Dr. Wagner had not yet written a report or provided to plaintiffs a list of his publications.

On December 30, 2013, plaintiffs agreed to allow Dr. Wagner to examine Ms. Blair in order to write a report under the condition that plaintiffs' counsel get a copy of all drafts of Dr. Wagner's report.   On January 3, 2014, defense counsel sent a letter stating, "It is my

understanding that we are in agreement that Dr. Martin Wagner qualifies as a rebuttal expert under the Court's final scheduling order, but that you have agreed to extend the time when his disclosures are due since he is going to evaluate Ms. Blair on January 31st.  As soon as I receive this report, I will forward to you." (Dkt. No. 34-2).  On January 7, 2014, plaintiffs' counsel responded to defense counsel's email saying, "I have no objection to the timing of Dr. Wagner's report or that it may be characterized as a rebuttal report . . . .  Dr. Wagner's report must still, of course, comply with the substance requirements of Rule 26." (Dkt. No. 36-1).

On January 31, 2014, Dr. Wagner examined Ms. Blair and issued a report that day to defendants that Ms. Blair suffered from Reflex Sympathetic Dystrophy or Complex Regional Pain Syndrome.  At that point, defendants sent the May 2013 surveillance video to Dr. Wagner. On February 7, 2014, Dr. Wagner found Ms. Blair's symptoms in the video to be less severe than the symptoms she displayed in his examination but decided that the May 2013 video did not change his opinion since Ms. Blair's condition could have worsened in the intervening months. He authored a February 7, 2014, "Addendum to IME" report that he sent to defense counsel regarding this work.

On February 11, 2014, defendants produced Dr. Wagner's January 31, 2014, report to plaintiffs' counsel.  Defendants made no mention to plaintiffs of the May 2013 surveillance video sent to Dr. Wagner or the February 7, 2014, Addendum to IME that Dr. Wagner prepared for defense counsel after reviewing the May 2013 surveillance video.

On February 17, 2014, defense counsel sent plaintiffs' counsel an email stating, "[s]ince Dr. Wagner agrees with the diagnosis of regional pain syndrome, I have no plans on calling him. . . . Can we agree that what you have suffices and I will let you know once and for all after Preito

and Beazley [plaintiffs' expert witnesses' depositions] are taken if I want to depose Wagner?"

(Dkt. No. 29-2).  Plaintiffs' counsel responded that day saying:

> I don't think what I have from Dr. Wagner qualifies as an expert rebuttal
> disclosure, as he really hasn't offered any opinions rebutting those from Drs.
> Preito and Beazley. . . .  If [Wagner's] report contains a complete statement of all
> opinions he will express and the reasons for them, then I don't think he qualifies
> as a rebuttal expert.  FRCP 26(a)(2)(B).  If he is going to issue another report with
> true rebuttal opinions, then I'd like to see it now . . . .  I would also want the other
> things required by Rule 26(a)(2)(B), including his compensation and all of the
> facts and data he has relied upon to form his opinions.  Don't want to be difficult
> about this; are you intending to use Wagner for another purpose?

(*Id.*).

> The next day, February 18, 2014, defense counsel replied, stating:

> It sounds to me like we are in agreement.  I think Wagner agrees with Prieto and
> Beazley.  My concern is whether the testimony of [Drs. Prieto and Beazley] will
> go beyond what is set out in their records and letter.  If so, then Wagner may have
> something to rebut.  If not, then I agree with you, it's not rebuttal and would [be]
> a waste of time and money. . . .

(*Id.*).

> Plaintiffs' counsel responded that day, stating:

> [I]f Dr. Wagner issues a rebuttal opinion rebutting the current disclosures of
> Prieto and Beazley after their depositions, then I may object at that time.  If Prieto
> and Beazley go beyond what I've currently disclosed, however, I agree that you
> can have Wagner issue a rebuttal of those new matters.

(*Id.*).

On February 26, 2014, defendants' counsel authorized Ms. Anderson to perform an

additional 16 hours of surveillance on Ms. Blair.  Ms. Anderson conducted surveillance of Ms.

Blair on March 7, 8, 9, and 13, 2014.  Defense counsel received this additional surveillance

video on March 9, 2014, and a report of the surveillance activity on or around March 20, 2014.

On March 13, 2014, defense counsel cross-examined plaintiffs' expert witnesses, and

there is no contention before this Court that either of plaintiffs' disclosed expert witnesses Dr.

Prieto or Dr. Beazley testified beyond their Rule 26 disclosures.  On or around March 15, 2014, defense counsel received a reformatted "day-in-the-life" video of Ms. Blair from plaintiffs' counsel, which they had been expecting.

On March 20, 2014, defense counsel provided to Dr. Wagner plaintiffs' day-in-the-life video of Ms. Blair along with the March 2014 surveillance video obtained from Ms. Anderson, asking if this additional information altered Dr. Wagner's previous opinion.  On March 25, 2014, defendants produced to plaintiffs for the first time the two surveillance videos and informed plaintiffs' counsel that the videos altered Dr. Wagner's opinions regarding Ms. Blair, that Dr. Wagner was in the process of drafting a written report, and that this written report would be forwarded to plaintiffs' counsel as soon as it was received by defendants, and plaintiffs' counsel disclosed Ms. Anderson as a witness for the defense.  The same day, plaintiffs' counsel requested an updated report from Dr. Wagner that satisfied all Rule 26 requirements, including the disclosure of a list of publications he authored in the past ten years.  On March 26, 2014, plaintiffs' counsel requested all of the footage taken by Ms. Anderson.

On March 28, 2014, defendants' counsel provided plaintiffs' counsel a report written on March 22, 2014, by Dr. Wagner which, relying on the March 2014 surveillance video and the day-in-the-life video, opined that he believes Ms. Blair suffers with malingering or a psychiatric conversion reaction, and that the videos lead him to believe that Ms. Blair was "exaggerating her symptoms" on January 31, 2014, and that her examination was "embellished" (Dkt. No. 34-3).

## II.     Motion To Exclude Dr. Wagner

Plaintiffs first move to exclude defendants' untimely disclosed expert witness Dr. Wagner (Dkt. No. 29).  In support of their motion, plaintiffs claim that Dr. Wagner has not provided a Rule 26 expert disclosure as required by Federal Rule of Civil Procedure Rule 26 and

that he was not timely disclosed under Rule 26 or under this Court's Final Scheduling Order (Dkt. No. 20).   Based on the Court's Final Scheduling Order, the correspondence between counsel, and the failure on the part of defense counsel and Dr. Wagner to produce a complete timely Rule 26 report, the Court finds Dr. Wagner was untimely disclosed, finds that such untimely disclosure was neither substantially justified nor harmless, and grants plaintiffs' motion to exclude defendants' untimely disclosed expert witness Dr. Wagner (Dkt. No. 29).

### III.   Motion For Sanctions

Plaintiffs next move for sanctions against defendants (Dkt. No. 37).   This motion, in addition to other sanctions, seeks to exclude Ms. Anderson and the surveillance videos she made as a result of defendants' failure to produce the documents or to disclose Ms. Anderson in accordance with the Court's Final Scheduling Order, Rule 26, and the parties' agreements.

In response, defendants claim that, when first created, they never intended to utilize the surveillance done in 2013 and assert attorney-work product as the reason they were not obligated to disclose Ms. Anderson or the surveillance videos in response to plaintiffs' discovery requests. Defendants then claim that, after supplying the May 2013 video surveillance to Dr. Wagner, defendants determined the video was useful solely for impeachment purposes and, therefore, need not be disclosed.   Defendants also claim that they were compelled to order further surveillance after Dr. Wagner's February 2014 Addendum to IME report, ordered that additional surveillance in March 2014, and provided it to Dr. Wagner who reviewed and then issued a revised report on March 22, 2014.

Defendants' reasoning breaks down when the Court examines all of the circumstances of discovery in this case.   As an initial matter, the Court determines that many of plaintiffs' discovery requests call for the disclosure of this information and the videos and that defendants

only claimed attorney work product privilege in response to one of several requests for production and interrogatories which would have revealed Ms. Anderson and the surveillance videos.  For that reason alone, the Court determines defendants did not properly claim the attorney work product privilege.

Defendants argue that they should not have been required to disclose Ms. Anderson and the surveillance videos because the surveillance was for impeachment purposes.   Even if this Court were willing to characterize Ms. Anderson's work and the surveillance videos she produced as solely for impeachment, this Court determines that impeachment evidence that could be used for substantive purposes must be disclosed with a party's initial disclosures without awaiting a discovery request under Rule 26(a); such evidence cannot be characterized as "solely for impeachment" to evade the disclosure requirements of Rule 26(a)(1)(A).  *See, e.g.*, *Wegener v. Johnson*, 527 F.3d 687, 690–91 (8th Cir. 2008). This is an analysis directed at a party's duty to make initial disclosures under Rule 26(a).

Regardless of a party's duty to make initial disclosures under Rule 26(a), this Court determines that all impeachment evidence is discoverable in response to a specific request under Rule 26(b).  Here, defendants did not lodge sufficient work-product objections to plaintiffs' specific discovery requests which clearly called for the production of information regarding Ms. Anderson and her surveillance videos.  The Court finds Ms. Anderson and her surveillance videos were responsive to the interrogatories and requests for production propounded by plaintiffs and that defendants violated Federal Rule of Civil Procedure 26(e)(1) by failing to supplement timely their initial disclosures and to lodge appropriate objections or to supplement timely their disclosures and responses to plaintiffs' specific discovery requests regarding Ms. Anderson and her surveillance videos.

After Dr. Wagner's initial review of the May 2013 surveillance video, defendants determined they needed to obtain more current video for Dr. Wagner to review. Defendants then authorized Ms. Anderson to conduct additional surveillance. Defendants provided this additional March 2014 surveillance video to Dr. Wagner, along with a recently reformatted day-in-the-life video produced by plaintiffs, and solicited a new opinion and medical diagnosis regarding defendants' view of Ms. Blair's condition. Only at that point did defendants disclose Ms. Anderson, the surveillance videos, and the true scope of the work performed by Dr. Wagner. These disclosures were made one week before the extended discovery deadline in the case.

There is no indication in the record before the Court that Dr. Wagner would have reached the same conclusions reached in his March 22, 2014, report relying solely on the day-in-the-life video and absent his review of Ms. Anderson's work and her surveillance videos. The Court rejects any suggestion that the timing of plaintiffs' production of a reformatted day-in-the-life video absolves defendants of the consequences of their conduct.

"When a party fails to provide information or identify a witness in compliance with Rule 26(a) or (e), the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (citing FED. R. CIV. P. 37(c)(1); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) ("failure to disclose in a timely manner is equivalent to failure to disclose")). Federal Rule of Civil Procedure 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions . . . .

The Court finds that defendants' failure to disclose in a timely manner Ms. Anderson and the surveillance videos she produced amounts to a failure to disclose and that, based on the sequence of events presented in this case, this failure was not substantially justified or harmless. For these reasons, the Court determines plaintiffs are entitled to sanctions pursuant to Rule 26 and Rule 37, and the Court finds it appropriate to exclude Ms. Anderson and the surveillance videos. *See, e.g.*, *Morris v. Metals USA*, 2011 WL 94559, *6 (D.S.C. Jan. 11, 2011) (prohibiting defendant from using a private investigator as a witness and a surveillance videotape as evidence at trial because the defendant failed to disclose the identity of the private investigator and the surveillance videotape recorded by the investigator in violation of Rule 26(a) and (e), and that such failure was not substantially justified or harmless).   Thus, the Court grants plaintiffs' motion for sanctions (Dkt. No. 37).  The Court declines to issue further sanctions.  *See id.*

IV.     **Motion For Settlement Conference**

Also before the Court is the parties' joint motion for settlement conference (Dkt. No. 45). Based on information received by the parties, the parties have scheduled a private mediation for Wednesday, May 28, 2014, and no longer request that the Court schedule a settlement conference with a Magistrate Judge, that motion is denied as moot (Dkt. No. 45).

* * *

For the foregoing reasons, the Court grants plaintiffs' motion to exclude the untimely expert disclosure of Martin H. Wagner, M.D. (Dkt. No. 29), grants plaintiffs' motion for sanctions in that the Court excludes Ms. Anderson and the surveillance videos  (Dkt. No. 37), and denies as moot the joint motion for settlement conference (Dkt. No. 45).

SO ORDERED this 27th day of May, 2014.

Kristine G. Baker
United States District Judge